# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

RICK LEON,

       Plaintiff,

vs.                                       No. CIV 07-0467 JB/WDS

MIKE KELLY and GARY GOODMAN,

       Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendants' Motion for Summary Judgment on All Claims and Memorandum of Law in Support, filed March 24, 2008 (Doc. 30)("Motion"). The Court held a hearing on June 19, 2008.  The primary issue is whether the Court should enter judgment in favor of Defendants Mike Kelly and Gary Goodman  because the New Mexico Statute of Frauds bars all of Plaintiff Rick Leon's claims.  Because the Court believes that the Supreme Court of New Mexico would hold that the oral partnership agreement alleged by Leon would not fall within the Statute of Frauds, the Court will deny the Defendants' motion for summary judgment.

## FACTUAL BACKGROUND

The material facts are largely undisputed.  Leon  does not dispute the alleged facts that the Defendants submit, and thus they are deemed admitted.  Leon submitted additional facts, but the Defendants contend that they are not material and thus cannot defeat summary judgment.  Many of Leon's additional facts are disputed.

From the mid-1970's to 1991, Leon worked in Albuquerque, New Mexico and was involved in various real estate activities.  See Plaintiff's Answers to Defendant's First Set of Interrogatories to Plaintiff, Answer No. 14, at 18-19 (Doc. 30-2)("Interrogatory").  At the time Leon was engaged

in real estate activities in Albuquerque during the 1980's, he was also involved in litigation, including litigation against him.  See Interrogatory No. 6, at 11.  One of the lawsuits filed against Leon arose from his claims of an oral contract with a Texas company, Wagner & Brown, which held an interest in real estate in Albuquerque.  See id.  The lawsuit with Wagner & Brown resulted in a reported case.  See Leon Ltd. v. Albuquerque Commons Partnership, 862 S.W. 2d 693 (Tex. App. 1992).

Leon left Albuquerque in 1991.  See Deposition of Rick Leon at 7:11-14 (taken December 5, 2007)(Doc. 30-3)("Leon Depo.").  In 2006, Leon was back in Albuquerque and made contact with Kelly.  See id. at 65:21-66:16.  Leon alleges that, in the first week of October 2006, he and Kelly agreed to form a partnership for the acquisition and development of Winrock Center.  See id. at 74: 4-12, 93:18-20.

Leon describes his partnership with Kelly to include property acquisition, development management, leasing, property management, residential condominium sales, and asset brokerage. See Plaintiff's Interrogatory Answer No. 17; Leon Depo. at 115:14-116:9.  Leon further describes his alleged partnership with Kelly to include operating companies that would develop, lease, and manage Winrock Center after its development; that the operating companies would go on for an indeterminate number of years; and that they would last as long as the Winrock Center project was owned.  See id. at 224:25-225:6.  Leon admitted that acquisition and development of the Winrock Center could not occur within the space of one year; rather, it would take eight months to close on the Winrock Center acquisition; a year to complete demolition of the portions that were to be razed; and about six years or longer to build out the first phase of the Winrock Center. See id. at 226:22-227:14.

The Defendants deny that they formed any partnership with Leon.  See Answer to Complaint

-2-

for Bad Faith ¶¶ 7, 8, 9, 11, 14, 17, 20, 24 & 28, at 2-4, filed June 20, 2007 (Doc. 6)("Answer"). Leon contends that the Defendants' denial is false or a contested issue of fact, and that whether a partnership was formed is disputed.  See Leon Depo. at 101-103, 115-118.

Leon testified that he knows the importance of reducing to writing oral agreements.  See Leon Depo. at 101:1-6.  Leon admits, however, that no writing was prepared to memorialize the alleged partnership.  See Complaint for Bad Faith and Fraud ¶ 17, at 3, filed May 11, 2007 (Doc. 1)("Complaint"); Leon Depo. at 101:7-9.  Leon testified that he wanted to have any partnership agreement in writing, and that he made requests of both Kelly and Goodman to have the agreement formalized, but ultimately left the issue in Kelly's hands.  See id. at 101:10-102:22.  Leon also states that memoranda exist that confirm the partnership.

Leon contends that, following the October 2006 agreement, he proceeded to develop pro formas, aerial views, 3-D presentations, and projections for the development of the Winrock Center, and project profit-and-loss projections.  See Deposition of Mike Kelly at 145, 231, 234, and 239 (taken January 11, 2008)("Kelly Depo.").  The Defendants counter that Leon misstates the impact of any work that he performed regarding the Winrock Center.  Leon worked on items for one of many presentation binders during a finite period commencing in January 2007, and his contribution was part of an effort by many people.  See Leon Depo. at 142:16-17, 320:1-14;  Deposition of Gary Goodman at 134: 20-24 (taken January 21, 2008)("Goodman Depo.")("[T]here were many, many pro forma prepared after January 17th.  Probably at the rate of one per week and the primary people working on putting together the pro forma were Debbie Bonsignore, Jaime Grijalva, [Gary Goodman] and Mike Kelly.").

The presentation binder was a three-ring binder prepared for potential investors.  See Leon Depo. at 143:22-144:2.  The Defendants contended that the amount and quality of work that Leon

prepared was insignificant.  Leon worked on eleven pages of materials for a presentation consisting of 244 pages.  See id. at 186:8-18. Leon's contribution included pro forma, which Leon described as projecting development costs to a "six-year projection of net operating income, cumulative development costs of the project, values, et cetera" and of which he admitted he assisted Kelly with the preparation.  Id. at 143:22-144:5.  Leon contributed 3-D presentations, which in an email he admitted were "guesswork at best."  Id. at 138:12-139:3. Leon further admitted that Goodman rejected the conceptual design that he developed for the Winrock Center project and that Leon agreed that his design would be discarded.  See id. at 202:4-10, 202:16-25.

Leon admitted that, other than preparing these few documents for an initial presentation binder, see id. at 186:10-19, he generally gave only advice to the Defendants between January and March, see id. at 205:4-14. Leon did not bring any equity investors to the project.  See id. at 205:15-18.  He did not bring any potential debt financiers to the project.  See id. at 205:20-23.  He did not bring any potential tenants to the project.  See id. at 206:1-3.  He invested no money in the project. See id. at 180:10-13.  He conceded that, although he "connected Mike Kelly with Larry Frank [representative of the then-Winrock Center owner, Pru-Winrock, LLC]," he had no special relationship with Frank on Pru-Winrock, LLC, id. at 206:9-207:1.

Kelly admitted that Leon and Kelly's joint effort developed an opening statement in the presentation binder describing the investment, acquisition, and development opportunity.  See Kelly Depo. at 237.  The Defendants do not dispute that Leon and Kelly worked together on an opening statement.

Leon contends that he and Kelly took the memorandum of offering which they both helped to develop to at least one financial institution, ING, in Atlanta in January of 2007 to obtain financing.  See Kelly Depo. at 225.  The Defendants contend that Leon misstates his role in meeting

with ING in January, 2007.  As he testified: "Mike [Kelly] was soliciting ING to be an equity partner in the acquisition and redevelopment of Winrock and he asked me to attend the meeting." Leon Depo. at 136:6-8.

Leon asserts that he contacted and dealt with developers, designers, architects, and others in the process of attempting to purchase the Winrock Center.  The Defendants contend that the evidence which Leon submits to support his assertion that he contacted and dealt with developers, designers, architects, and others in the process of attempting to purchase the Winrock Center does not support his factual assertion.  The referenced evidence comprises two general email messages from Leon regarding "SOM," an architectural firm named Skidmore Ownings & Merrill.  See Plaintiff's Exhibit 9 (Doc. 31-2).  SOM has not been involved in the Winrock Center project.  See Goodman Depo. at 70:25-71:1.

Leon contends the purchase agreement for the Winrock Center was signed on March 12, 2007.  See Plaintiff's Exhibit 12 (Doc. 31-2).  The Defendants do not dispute that a purchase-and-sale agreement by and between Pru-Winrock, LLC and Americas Place Partners, LLC bears an effective date of March 12, 2007.

Leon contends that the Defendants offered $250,000.00 for his work and/or interest in the purchase of the Winrock Center.  See Plaintiff's Exhibits 26, 27 (Doc. 31-2).  The Defendants dispute that the evidence Leon referenced indicates they offered Leon any sum of money for his "work and/or interest in the purchase of Winrock Center."  The e-mail submitted does not use these words, they argue, but is a proposal "for discussion purposes only" from Goodman discussing the payment of "a fee" to Leon subject to closing on the property and subject to the payment proposal being memorialized in a written contract.

Leon contends that the partnership was for an indefinite period and not for a definite term.

-5-

He further asserts that the development of the Winrock Center could be an ongoing process if such development were completed, but that the partnership with Kelly could have been dissolved at any time and, in fact, lasted less than one year, when Kelly and Goodman dissolved it after the purchase agreement had been signed. See Response in Opposition to Defendant's Motion for Summary Judgment ¶ 7, at 3, filed April 8, 2008 (Doc. 31)("Response"). The Defendants dispute Leon's contentions, but maintain that the allegations do not create an issue of material fact that may defeat summary judgement. The Defendants maintain that Leon's assertions are nothing more than a new and implausible scenario that Leon has thought up in a desperate attempt to avoid summary judgement. The Defendants contend that Leon is alleging for the first time that the partnership with Kelly terminated within a year and that the Statute of Frauds cannot bar his claim. See Defendants' Reply in Support of their Motion for Summary Judgment on All Claims at 3, filed April 22, 2008 (Doc. 32)("Reply").

The Defendants also contend that the issue of the duration of the alleged partnership is not a fact, but the unsupported argument of a new allegation, which is contrary to evidence of Leon's sworn testimony and his pleadings. The Defendants contend that the dispute about the duration of the partnership cannot create an issue of fact to defeat summary judgement. See Ruleford v. Tulsa World Pub. Co., 266 Fed.Appx. 778, 784 (10th Circuit 2008)(holding that, at summary judgement, focus is on evidence, not allegations; unsupported conclusory allegations cannot create an issue of fact).

## PROCEDURAL BACKGROUND

On May 11, 2007, Leon filed suit against Kelly and Goodman. The Defendants answered the Complaint on June 20, 2007. In his Complaint, Leon asserts five counts against the Defendants. In Count I of his complaint, Leon alleged that the Defendants attempted to deprive him "of the

benefit of his bargain," an action that would "constitute a breach of the covenant of good faith and fair dealing." Complaint ¶ 23, at 4. In Count II, Leon alleges that the Defendants' actions "were a breach of fiduciary duties of parties and partners and an attempt to deprive the Plaintiff of his rights under their agreements." Id. ¶ 27, at 4-5. As to Counts III and IV, Leon avers that all of the "agreed-to-a-partnership" allegations are incorporated into Counts III and IV. Id. ¶¶ 30, 34, at 5. In Count III, Leon asserts that "[t]he actions of Defendants constitute intentional and/or negligent misrepresentations of the Defendants' intent to join in partnership with Plaintiff." Id. ¶ 31, at 5. Leon asserts, in Court IV, that the Defendants "obtaining information on how to develop Winrock Center, how to acquire and develop the Winrock Center and obtain Plaintiff's expertise in creating pro formas, analysis and development of the shopping center were all done with the intent of later depriving him of any of the benefit of his actions and constituted fraud therein." Id. ¶ 35, at 5-6. And in Count V, Leon contends that the Defendants' actions "were done in a conspiracy to defraud, a conspiracy to interfere with Plaintiff's business relationships and a conspiracy to breach the fiduciary duty owed by Defendants, Kelly and Goodman, owed to Plaintiff." Id. ¶ 38, at 6.

During the first part of his deposition, Leon consistently testified that he and Kelly agreed to a partnership. When, however, shown a document which established that the buyer of the Winrock Center was Americas Place Partners, LLC, a New Mexico limited liability company, see Leon Depo. at 145:10-23, 150:8-25, 151:4-25, 154: 12-156:2, Leon changed his testimony and said he had been told he was going to be a member of Americas Place Partners, LLC. He testified: "I understood it was an LLC"; "I knew all along it was an LLC." Leon Depo. at 155-156.

On March 24, 2008, the Defendants moved for summary judgment pursuant to rule 56 of the Federal Rules of Civil Procedure on all the counts in the Complaint on the grounds that the Statute of Frauds barred the claims. See Motion at 8-9. In their Statement of Undisputed Fact No. 13, the

Defendants alleged:

> Plaintiff admitted that acquisition and development of WRC could not occur within the space of one year; rather, it would take eight months to close on the WRC acquisition, a year to complete demolition of the portions which would be razed, and about six years or longer to build out Phase One of WRC.

Motion ¶ 13, at 3.  Leon responded to the motion for summary judgment on April 8, 2008, arguing that the Statute of Frauds was not applicable to the partnership agreement, or that an exception applied, and arguing that a partnership agreement was not necessary for counts III and IV on misrepresentation and fraud to stand.  See Response at 4-8.  Leon admitted the allegations in the Defendants' Statement of Undisputed Fact No. 13.  Kelly and Goodman replied to the response on April 22, 2008, maintaining that the State of Frauds  applied and barred Leon's claims.  See Reply 4-11.  They also further argued that Leon's admission during his deposition that he "knew all along it was an LLC" barred his claims because an LLC cannot be formed orally and that Leon had presented insufficient evidence on Counts III and IV.  See id. at 4-5, 11-12.  The Court held a hearing on the motion on June 19, 2008.

## LAW REGARDING MOTIONS FOR SUMMARY JUDGEMENT

Summary judgment is appropriate where the movant demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  See also Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co., 52 F.3d 1522, 1527 (10th Cir.1995)("Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.")(internal quotations omitted).  Summary judgment is "properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which

are designed 'to secure the just, speedy and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986)(quoting Fed. R. Civ. P. 1).

The movant bears the initial burden of showing that there is an absence of evidence to support the non-moving party's case.  See La Casa de Buena Salud v. United States, No. CIV 07-238 JB/RHS, 2008 WL 2323495 at *14 (D.N.M.)(Browning, J.)(citing Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir.1991)).  Once the movant meets this burden, rule 56(e) requires the non-moving party to designate specific facts showing that there is a genuine issue for trial.  See Celotex Corp. v. Catrett, 477 U.S. at 324.  When the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." Paul v. Monts, 906 F.2d 1468, 1474 (10th Cir. 1990)(internal quotations omitted).

## ERIE DOCTRINE

Under the Erie doctrine, federal courts sitting in diversity must apply the substantive law of the state that would otherwise have jurisdiction over the claims at issue.  See Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938); Gasperini v. Center for Humanities, Inc., 518 U.S. 415, 427 (1996).  In this case, as the parties have stipulated, New Mexico law governs.  See Joint Status Report at 2, filed September 25, 2007 (Doc. 8).  In the absence of an authoritative pronouncement from the highest court, a federal court's task under the Erie doctrine is to predict how the state's highest court would rule if presented with the same case. See Wade v. Emcasco Ins. Co., 483 F.3d 657, 666 (10th Cir. 2007).  The federal court "must follow the decisions of intermediate state courts

in the absence of convincing evidence that the highest court of the state would decide differently." Stoner v. New York Life Ins. Co., 311 U.S. 464, 467 (1940).  To predict how the state's highest court would rule, the federal court "may seek guidance from decisions rendered by lower courts in the relevant state, appellate decisions in other states with similar legal principles, district court decisions interpreting the law of the state in question, and 'the general weight and trend of authority' in the relevant area of law."  Wade v. Emcasco Ins. Co., 483 F.3d 657, 666 (10th Cir. 2007)(citations and internal quotation marks omitted).

## RELEVANT NEW MEXICO LAW

New Mexico has adopted the Uniform Partnership Act, but the common law continues to supplement the law governing partnerships in the state.  While persons cannot form a limited liability company orally, they can enter into an oral partnership agreement.  The Statute of Frauds, however, applies to partnership agreements as it does to other agreements.

### 1.    New Mexico Partnership Agreements.

The New Mexico Uniform Partnership Act ("UPA") is the principal source of law concerning New Mexico general partnerships.  See Wiste v. Neff and Co., CPA, 126 N.M. 232, 236, 967 P.2d 1172, 1176 (Ct.App. 1998).  As the New Mexico Court of Appeals stated in Wiste v. Neff and Co., CPA: "In New Mexico, partnerships are governed by the Uniform Partnership Act."  Id. See also N.M.S.A. 1978 § 54-1A-1205(a)(defining applicability of the UPA).  On the other hand, "unless displaced by particular provisions of the [UPA], the principles of law and equity supplement" the UPA.  Id. § 54-1A-104(a).  Thus, the UPA and the common law may both apply to partnerships, and unless some provision of the UPA displaces it, the common law will apply.  See Hovet v. Allstate Ins. Co., 135 N.M. 397, 406, 89 P.3d 69, 78 (2004)("[S]tatutes in derogation of the common law 'will be interpreted as supplanting the common law only if there is an explicit

indication that the legislature so intended.'")(quoting <u>Sims v. Sims</u>, 122 N.M. 618, 623, 930 P.2d

153, 158 (1994).  The UPA is also to be "applied and construed . . . to make uniform the law with

respect" to partnerships among those states enacting a uniform partnership act.  N.M.S.A. 1978 §

54-1A-1201.

New Mexico recognizes partnerships created by oral agreement.  <u>See</u> <u>Citizens Bank of</u>

<u>Clovis v. Williams</u>, 96 N.M. 373, 375, 630 P. 2d 1228, 1230 (1981).  In <u>Citizens Bank of Clovis</u>

<u>v. Williams</u>, the Supreme Court of New Mexico stated:

> The Bank contends that in any event, the partnership agreement should have been in
> writing since its involved land.  Otherwise, the partnership agreement is void as
> violating the Statute of Frauds.  Under the New Mexico Uniform Partnership Act,
> an interest of a partner in the partnership is personal property and not real property,
> even if land is one of the assets. . . . The trial court found that the transaction
> constituted a partnership transaction and enforced the oral agreement covering the
> assets, including the land.  In this, the trial court correctly applied existing law.
>
> It is generally recognized that partnership agreements need not be formal.

<u>Id.</u> at 1230.  The UPA provides:

> Definitions.  As used in the Uniform Partnership Act (1994): . . .
>
> (7) "Partnership Agreement" means the agreement, whether written, oral or implied,
> among the partners concerning the partnership, including amendments to the
> partnership agreement . . . .

 N.M.S.A. 1978 § 54-1A-101.  Thus, in New Mexico, a partnership can be formed with an oral

agreement.

The UPA also provides: "A partner has the power to disassociate at any time, rightfully or

wrongfully, by express will pursuant to Section 601(1)."  <u>Id.</u> § 54-1A-602(a).  This provision of the

UPA in New Mexico may not be varied or waived by agreement.  According to the UPA: "The

partnership agreement may not . . . [v]ary the power to disassociate as a partner under Section 54-

1A-602(a) N.M.S.A. 1978, except to require the notice under Section 54-1A-601(1) N.M.S.A. 1978

to be in writing." <u>Id.</u> § 54-1A-103(b).

     **2.**      **<u>New Mexico Statute of Frauds.</u>**

New Mexico does not have a codified Statute of Frauds, but the English Statute of Frauds is in effect in New Mexico as part of the common law.  <u>See</u> <u>Skarda v. Skarda</u>, 87 N.M. 497, 501, 536 P.2d 257, 261 (1975).  In particular, New Mexico has adopted the fourth section of the English Statute of Frauds, which bars the enforcement of contracts that cannot be performed within one year, as part of the common law of New Mexico.  <u>See</u> <u>Skarda v. Skarda</u>, 87 N.M. at 501, 536 P.2d at 261 (citing <u>Pitek v. McGuire</u>, 51 N.M. 364, 368, 184 P.2d 647, 651 (1947)).  The relevant part of the fourth section of the Statute of Frauds provides:

> 'no action shall be brought . . . upon any agreement that is not to be performed within the space of one year from the making thereof; unless the agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith or some other person thereunto by him lawfully authorized.'

<u>Jennings v. Ruidoso Racing Ass'n</u>, 79 N.M. 144, 146, 441 P.2d 42, 44 (1968)(quoting English Statute of Frauds and Perjuries (29 Charles II, C. 3)).

No New Mexico court has ruled on how this provision of the Statute of Frauds is to be applied to partnership agreements.  New Mexico courts have, however, held that a contract for permanent employment is not within the fourth section of the Statute of Frauds because it is capable of being completed by the death of the employee.  <u>See</u> <u>Kestenbaum v. Pennzoil Co.</u>, 108 N.M. 20, 23, 766 P.2d 280, 283 (1988).  An employment contract that expressly lasts for a term of three years, on the other hand, does fall within the fourth section of the Statute of Frauds.  <u>See</u> <u>Gonzales v. United Southwest Nat. Bank of Santa Fe</u>, 93 N.M. 522, 524, 602 P.2d 619, 621 (1979).

## <u>RELEVANT LAW FROM OTHER JURISDICTIONS</u>

The majority of courts have adopted a mechanical test for determining whether a contract

can be performed within a year, and will not preclude an oral contract that does not contain a definite term.  On the other hand, a minority of jurisdictions look at evidence to determine whether the contract is likely to be performed in one year.  While most courts hold that partnership agreements can be within the Statute of Frauds, the states and commentators agree that a partnership agreement that can be terminated at will is not within the Statute of Frauds.

1.      **The Statute of Frauds**.

The majority approach to the Statute-of-Frauds provision barring enforcement of contracts that cannot be performed within one year is to apply a test of logical possibility.  If there is any way that the contract, at the time of the making of the contract, can be performed or completed within one year, then it is outside the Statute of Frauds.  The test is an abstract, mechanical test.  As one leading treatise puts it:

> It is well settled that the oral contracts invalidated by the Statute because they are not to be performed within a year include only those which cannot be performed within that period.  A promise which is not likely to be performed within a year, and which in fact is not performed within a year, is not within the Statute if at the time the contract is made there is a possibility in law and in fact that full performance such as the parties intended may be completed before the expiration of a year.

> Thus, in one case, the court ruled that an oral contract for the plaintiff to serve as construction manager on a $120 million project with no duration specified, but anticipated by the parties to last from three to ten years, was not within the Statute, holding "that an oral contract that does not say, in express terms, that performance is to have a specific duration beyond one year is, as a matter of law, the functional equivalent of a contract of indefinite duration for the purposes of the statute of frauds. Like a contract of indefinite duration, such a contract is enforceable because it is outside the proscriptive force of the statute regardless of how long completion of performance will actually take." [quoting C.R. Klewin, Inc. v. Flagship Properties, Inc., 220 Conn. 569, 583-84, 600 A.2d 772, 779 (1991)]

> In another leading case on this section of the Statute, the Supreme Court of the United States said: "The parties may well have expected that the contract would continue in force for more than one year; it may have been very improbable that it would not do so; and it did in fact continue in force for a much longer time. But they made no stipulation which in terms, or by reasonable inference, required that result.

-13-

The question is not what the probable, or expected, or actual performance of the contract was, but whether the contract, according to the reasonable interpretation of its terms, required that it should not be performed within the year." [quoting Warner v. Texas & P. Ry. Co., 164 U.S. 418, 434 (1896)]

WILLISTON ON CONTRACTS § 24:3 (4th ed. 2008)(footnotes omitted).  The minority approach is to allow the parties' actual understanding and the surrounding circumstances to influence whether an agreement is within the Statute of Frauds.  See LynkUs Communications, Inc. v. WebMD Corp., 965 So.2d 1161, 1165 (Fla. App. 2007)(noting that Statute applies when the parties' intention is that agreement will not be performed within one year); Roger Edwards, LLC v. Fiddes & Son, Ltd., 245 F.Supp.2d 251, 258 (D.Me. 2003)("Under Maine law, the fact that the contract at issue could conceivably have been performed within one year is not determinative.  Rather, the court must consider all of the factual circumstances . . .").  Under Texas law, for instance, "where the agreement, either by its terms or by the nature of the required acts, cannot be completed within one year, it falls within the statute . . . .  That is, where an oral contract omits the performance term, duration may properly be implied from extrinsic evidence."  Niday v. Niday, 643 S.W.2d 919, 920 (Tex. 1982).

The purpose of the Statute of Frauds is, as the name implies, to prevent fraud.  The Statute is designed to curtail fraud by requiring that certain contracts be reduced to writing, which should make it harder for someone to fraudulently claim that a contract exists.  See C.R. Klewin, Inc. v. Flagship Properties, Inc., 220 Conn. at 574, 600 A.2d at 775.  Courts and commentators have frequently criticized the Statute of Frauds, particularly the one-year provision.  See id., 220 Conn. at 574-77, 600 A.2d at 775-76 (discussing at length judicial and scholarly criticisms of the one-year provision).  As Professor Farnsworth wrote:

If the one-year provision is based on the tendency of memory to fail and of evidence to go stale with the passage of time, it is ill-contrived because the one-year period

does not run from the making of the contract to the proof of the making, but from the making of the contract to the completion of performance. If an oral contract that cannot be performed within a year is broken the day after its making, the provision applies though the terms of the contract are fresh in the minds of the parties. But if an oral contract that can be performed within a year is broken and suit is not brought until nearly six years (the usual statute of limitations for contract actions) after the breach, the provision does not apply, even though the terms of the contract are no longer fresh in the minds of the parties.

If the one-year provision is an attempt to separate significant contracts of long duration, for which writings should be required, from less significant contracts of short duration, for which writings are unnecessary, it is equally ill-contrived because the one-year period does not run from the commencement of performance to the completion of performance, but from the making of the contract to the completion of performance. If an oral contract to work for one day, 13 months from now, is broken, the provision applies, even though the duration of performance is only one day. But if an oral contract to work for a year beginning today is broken, the provision does not apply, even though the duration of performance is a full year.

2 E. FARNSWORTH, CONTRACTS § 6.4, at 110-11 (2d ed. 1990)(footnotes omitted).  The Supreme

Court of Connecticut expressed the essence of the modern, majority view:

[T]he one-year provision no longer seems to serve any purpose very well, and today its only remaining effect is arbitrarily to forestall the adjudication of possibly meritorious claims. For this reason, the courts have for many years looked on the provision with disfavor, and have sought constructions that limited its application.

C.R. Klewin, Inc. v. Flagship Properties, Inc., 220 Conn. at 577, 600 A.2d at 776.

### 2.    **The Uniform Partnership Act.**

In most states that have enacted some form of the Uniform Partnership Act, partnership

agreements can be within the Statute of Frauds.  See, e.g., Abbott v. Hurst, 643 So.2d 589, 592 (Ala.

1994); Dwight v. Tobin, 947 F.2d 455, 459 (11th Cir. 1991)(applying "well-settled Florida law").

The states and commentators also all agree, however, that a partnership agreement which can be

terminated at will is not within the Statute of Frauds.  See, e.g., Sterling v. Sterling, 800 N.Y.S.2d

463, 464-65 (N.Y.A.D., 3 Dept. 2005)(holding that oral agreement between brothers to run a dairy

farm to be at-will and indefinite in duration, and therefore not within Statute); Abbott v. Hurst, 643

So.2d at 592-93 (holding that partnership terminable at will not within Statute of Frauds); Am. Jur. 2d Partnership § 90 (2008)(noting that "contract of partnership that fixes no definite time for the duration or continuance of the partnership and that, therefore, is susceptible of performance within a year by the dissolution of the partnership," is not within the Statute of Frauds).

## ANALYSIS

While the Defendants shifted the focus of their arguments from their moving papers when they filed their reply and appeared at oral argument, it is best and fairest to assume, for the purposes of this motion, that Leon thought he was in a partnership, not in a limited liability company.  And while the Court agrees that the Statute of Frauds applies to partnership agreements, like it does to other agreements, the Court concludes that New Mexico would adopt the majority rule to determine when a contract cannot be performed within one year.  Applying that rule to the alleged agreement, the Court concludes that the Statute of Frauds does not bar enforcement.

## I.      THE COURT WILL ASSUME THAT LEON THOUGHT THAT HE WAS IN A PARTNERSHIP.

In their initial motion for summary judgment, Kelly and Goodman assume for the purposes of their argument that there was an oral partnership agreement as alleged by Leon.  See Motion at 5, 9.  Later, in their reply, the Defendants contend for the first time that Leon's sworn deposition testimony establishes that Leon thought he was going to be a member of a limited liability company, not a partner in a partnership.  See Reply at 3.  The Defendants contend that raising this issue in their reply is proper because Leon, in his response to the summary judgment motion, asserted for the first time that the alleged partnership was under the UPA.  See id. at 4, n.1.

Leon had no obligation to make his assertion that the alleged partnership was under the UPA earlier in the litigation.  Leon's response was his first significant legal argument since filing his

Complaint.  The Defendants do not state why Leon would be required to specify in his Complaint that the UPA governed his partnership claims.

There is nothing surprising about the UPA governing a partnership.  The UPA expressly governs any general partnership formed under the laws of New Mexico after the effective date of the statute.  See N.M.S.A. 1978 § 54-1A-1205(a)(1).  Because of this general applicability of the UPA, the Defendants' argument that Leon's claims are barred because the alleged agreement was to create a limited liability company, which must be created by filing with the state and not by oral agreement, is not properly before the Court.  It is unfair of the Defendants to raise a new, dispositive issue in the reply, precluding Leon from addressing it fully in the briefing or supplementing the record.  The Court will thus assume, for the purpose of Defendants' motion for summary judgment, that Leon thought he was involved in a partnership.

Based on this assumption, there are no disputed issues of material fact.  Leon and the Defendants agree that Leon alleges the existence of a partnership agreement and that the partnership agreement contemplated a long-term business endeavor involving the acquisition of Winrock Center, demolition and building, sales and leasing, and other related activities over the course of a number of years.  See Motion ¶¶ 7-9, at 2 (stating undisputed facts include alleged oral agreement for a partnership to operate long-term, over an indeterminate number of years); Response  ¶ 1, at 1 (agreeing those facts are undisputed).  The only question then is whether, based on these undisputed facts, the Statute of Frauds bars enforcement of the alleged oral partnership agreement and thus bars Leon's claims.   Summary judgment is appropriate, and the Defendants would be entitled to judgment as a matter of law, if the Statute of Frauds bars Leon's claims.  See Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co., 52 F.3d at 1527.

## II.     THE STATUTE OF FRAUDS DOES NOT BAR ENFORCEMENT OF THE ORAL <u>PARTNERSHIP AGREEMENT</u>.

Kelly and Goodman contend that the New Mexico Statute of Frauds prohibiting the enforcement of oral agreements that cannot be performed within one year's time bars Leon's claims. The Defendants contend that it is an undisputed fact that Leon believed that the partnership's goals would take years to accomplish: eight months to close on the acquisition of the Winrock Center, a year to complete demolitions work, and another six years or more to complete the first phase of the project. <u>See</u> Motion at 7.  The Defendants also contend that other aspects of the alleged partnership agreement, such as managing the development, leasing and sales, and asset brokerage, are all activities that by Leon's own admission were to continue on for years.  <u>Id.</u> at 7-8.

Leon admits that there was never a written partnership agreement, but contends that there are memoranda evidencing the partnership's existence.  <u>See</u> Response ¶ 3 at 1-2.  Leon also contends that he wanted to have a written agreement, but that Kelly and Goodman rebuffed his efforts to have the agreement reduced to writing.  <u>See id.</u> ¶ 4, at 2.  Leon also admits that the anticipated activities of the partnership would take years to perform.  <u>See id.</u> ¶ 1, at 1 (admitting certain of Defendants' alleged facts).  Leon contends, however, that the Statute of Frauds should not bar enforcement because the agreement could have been performed within one year.  Leon also contends that, even if the Statute of Frauds applies, there are memoranda indicating the oral agreement's existence and that he had fully performed his side of the bargain, either of which would allow enforcement of the agreement despite the Statute of Frauds.

The Supreme Court of New Mexico has not ruled whether a partnership agreement of the kind alleged by Leon is within the Statute of Frauds, nor have any other New Mexico state courts considered the issue in any published or otherwise available opinions**.**  As such, the <u>Erie</u> doctrine

directs the Court to predict how the Supreme Court of New Mexico would rule on this issue, including by looking at other sources of law.  See Wade v. Emcasco Ins. Co., 483 F.3d at 666. Ultimately, the Court believes that the Supreme Court of New Mexico would hold that the partnership agreement alleged by Leon would not be within the Statute of Frauds because it is indefinite and not for a specific term.  The New Mexico Statute of Frauds therefore does not bar any of Leon's claims.  Because the Statute of Frauds does not bar Leon's claims, the Court need not and will not address the arguments that Leon makes that the separate exceptions to the Statute of Frauds for performance and for written memoranda are met in this case.

### A.    THE STATUTE OF FRAUDS APPLIES TO PARTNERSHIP AGREEMENTS.

The Supreme Court of New Mexico does not appear to have ever explicitly said that the Statute of Frauds applies to partnership agreements.  The Court is convinced, though, that under New Mexico law, partnership agreements are not exempt from the Statute of Frauds.

New Mexico does not have a codified Statute of Frauds, but does have a Statute of Frauds as part of the common law.  See Skarda v. Skarda, 87 N.M. at 501, 536 P.2d at 261.  In particular, the fourth section of the English Statute of Frauds, which bars the enforcement of contracts that cannot be performed within one year, has been adopted as part of the common law of New Mexico. See Skarda v. Skarda, 87 N.M. at 501, 536 P.2d at 261.

New Mexico's UPA, N.M.S.A. 1978 §§ 54-1A-101 to 1206, is the main source of general partnership law in New Mexico.  See Wiste v. Neff and Co., CPA, 126 N.M. at 236, 967 P.2d at 1176.  It applies to any general partnership formed after the Act entered into effect.  See N.M.S.A. 1978 § 54-1A-1205(a)(1).  The principles of law and equity supplement the UPA; unless some provision of the UPA displaces it, the common law applies.  See id. § 54-1A-104(a); Hovet v. Allstate Ins. Co., 135 N.M. at 397, 89 P.3d at 78 (holding that statutes in derogation of the common

-19-

law only displace the common law on a showing of clear legislative intent).  The UPA is also to be "applied and construed . . . to make uniform the law with respect" to partnerships among those states enacting the UPA.  N.M.S.A. 1978 § 54-1A-1201.  Accordingly, the Court concludes that under New Mexico law partnership agreements are not exempt from the Statute of Frauds.

In most states that have enacted the UPA, partnership agreements can be within the Statute of Frauds.  See, e.g., Dwight v. Tobin, 947 F.2d at 459 (applying "well-settled Florida law"); Abbott v. Hurst, 643 So.2d at 592.  In keeping with the UPA's mandate for uniformity among enacting states, the New Mexico UPA should be similarly construed to not exempt partnership agreements from the Statute of Frauds.

Partnership agreements in New Mexico can, of course, be oral agreements under the UPA.  See; Citizens Bank of Clovis v. Williams, 96 N.M. at 375, 630 P.2d at 1230; N.M.S.A 1978 § 54-1A-101(7) (defining partnership agreement).  It does not follow, however, that the Statute of Frauds is inapplicable to partnership agreements.  The traditional Statute of Frauds does not apply to all contracts; it is potentially applicable only in the right circumstances.

There is no inconsistency in oral partnership agreements being valid under the UPA and at the same time certain Statute of Frauds provisions applying to those agreements where appropriate.  Because the two scenarios are consistent, the UPA should not be considered to displace the common-law requirements of the Statute of Frauds.  See Hovet v. Allstate Ins. Co., 135 N.M. at 406, 89 P.3d at 78; N.M.S.A 1978 § 54-1A-104(a).  In Citizens Bank of Clovis v. Williams, the Supreme Court of New Mexico held that the Statute of Frauds provision requiring a writing for transfers of interest in land did not apply to the transfer of an interest in a partnership that owned land because a partnership interest is personal property, regardless of the nature of the underlying partnership assets.  See 96 N.M. at 375, 630 P. 2d at 1230.  This holding does not, however, say anything about

-20-

whether other provisions of the Statute of Frauds might apply to partnership agreements.  In fact, Citizens Bank of Clovis v. Williams reinforces the idea that the Statute of Frauds applies.  The Supreme Court of New Mexico did not base its holding on the inapplicability of the Statute of Frauds to partnerships but on the fact that partnership interests are personal, not real property.  See Citizens Bank of Clovis v. Williams, 96 N.M. at 375, 630 P. 2d at 1230.  In sum, the Court is convinced that in New Mexico, partnership agreements can be within the Statute of Frauds.

### B.   THE ALLEGED PARTNERSHIP AGREEMENT COULD BE PERFORMED IN ONE YEAR.

The Defendants contend that the agreement alleged by Leon contemplated a long-term endeavor lasting several years.  Leon does not dispute this fact, but argues that nonetheless the agreement would not be within the Statute of Frauds.  The Court agrees with Leon on this issue.  Because the alleged partnership was indefinite and not for a term of years, it could be performed in less than one year's time within the meaning of the Statute of Frauds.

Although they have not addressed the issue in the context of partnership agreements, New Mexico courts have followed the majority approach to determining when a contract cannot be performed within one year.  The majority approach involves a mechanical and abstract consideration of the terms of the contract.  Under the majority approach, a contract is incapable of being performed within one year only if it is genuinely impossible that it be performed within one year.  See WILLISTON ON CONTRACTS § 24:3 ("It is well settled that the oral contracts invalidated by the Statute because they are not to be performed within a year include only those which cannot be performed within that period.").  New Mexico courts have held that a contract for permanent employment, for example, is not within the Statute because it is capable of being completed by the death of the employee.  See Kestenbaum v. Pennzoil Co., 108 N.M. at 23, 766 P.2d at 283.  An

employment contract that expressly lasts for a term of three years, on the other hand, does fall within the Statute.  See Gonzales v. United Southwest Nat. Bank of Santa Fe, 93 N.M. at 524, 602 P.2d at 621.  There is some authority for the proposition that the understanding of the parties is to be considered and that, if the parties clearly contemplated that performance would take more than a year, then the agreement is within the Statute of Frauds.  See LynkUs Communications, Inc. v. WebMD Corp., 965 So.2d at 1161 (noting that Statute applies when intention of parties is that agreement will not be performed within one year); Roger Edwards, LLC v. Fiddes & Son, Ltd., 245 F.Supp.2d at 258 ("Under Maine law, the fact that the contract at issue could conceivably have been performed within one year is not determinative.  Rather, the court must consider all of the factual circumstances . . .").

      None of this authority comes from New Mexico, however, and New Mexico has followed the majority approach in this area.  The alleged partnership agreement may have contemplated a long-term endeavor, but there is no indication that it was to be for a set number of years or that it would otherwise be logically impossible for the agreement to have been performed in a year or less. See Warner v. Texas & P. Ry. Co., 164 U.S. at 434 ("The parties may well have expected that the contract would continue in force for more than one year; it may have been very improbable that it would not do so . . . . But they made no stipulation which in terms, or by reasonable inference, required that result."); WILLISTON ON CONTRACTS § 24:3.  To the extent that the alleged agreement assumed an ongoing arrangement, it would be for an indefinite term, and thus outside the one-year provision.  See, e.g., C.R. Klewin, Inc. v. Flagship Properties, Inc., 220 Conn. 569 at 584, 600 A.2d at 779 (noting that contracts of indefinite duration are outside the Statute).  The agreement would therefore not be within the Statute of Frauds.  While the result may seem mechanical and formalistic to the Defendants, and to ignore the reality of a large, modern construction project, the majority rule

-22-

construes the Statute of Frauds' one-year rule narrowly.

It is worth noting that, in Leon Ltd. v. Albuquerque Commons Partnership, a previous case involving Leon and concerning a similar Statute-of-Frauds issue, the Texas appellate court held that the oral agreement alleged there was within the Statute of Frauds because it concerned a tract of land that was under a lease that would not expire for several years, preventing performance of the agreement for a definite term of several years. Id., 862 S.W. at 702. That situation is different from the present case, because there is no certain term of years at issue – the alleged agreement is long-term in nature, but also indefinite. Additionally, Texas law allows for the consideration of extrinsic evidence when a contract does not specify the time of performance. See, e.g., Niday v. Niday, 643 S.W.2d at 920.

While the operation of the majority rule might seem odd and unnecessarily formal, it is grounded in a sound policy decision. Courts and commentators have often found that the one-year provision is not useful for screening out fraudulent or poorly-supported claims or for encouraging people to put significant agreements in writing, but that its principal effect is to arbitrarily exclude potentially meritorious actions. See, e.g., C.R. Klewin, Inc. v. Flagship Properties, Inc., 220 Conn. at 577, 600 A.2d at 776; 2 E. FARNSWORTH, CONTRACTS § 6.4, at 110-11 (2d ed. 1990). Accordingly, courts skeptical of the usefulness of the Statute's ban on contracts to be performed beyond one year have limited the application of the Statute through rigorous adherence to the technicalities of the common law. See, e.g., C.R. Klewin, Inc. v. Flagship Properties, Inc., 220 Conn. at 577, 600 A.2d at 776.[1]

_____

[1] Additionally, although there is no New Mexico case law directly on point, most courts and commentators consider partnership agreements that are terminable at will to be capable of being performed within one year. See, e.g., Sterling v. Sterling, 800 N.Y.S.2d at 463 (holding oral agreement between brothers to run a dairy farm to be at-will and indefinite in duration, and therefore

**III.   THE COURT WILL NOT DECIDE WHETHER COUNTS III AND IV OF THE COMPLAINT ARE PREDICATED UPON THERE BEING AN AGREEMENT, NOR WHETHER THERE IS EVIDENCE SUPPORTING THOSE COUNTS.**

Leon does not dispute that Counts I, II, and V of his Complaint are tied to "the agreed-to-a-partnership" allegations.  Leon contends, however, that Counts III and IV are not predicated on the alleged partnership agreement.  The Defendants contend that all of Leon's claims are predicated upon the existence of an agreement.  Because the Court finds that the Statute of Frauds is inapplicable to the alleged agreement, it is unnecessary to decide at this point whether Counts III and IV depend upon the existence of an agreement.

---

not within Statute); <u>Abbott v. Hurst</u>, 643 So.2d at 592 (holding that partnership terminable at will not within Statute of Frauds); Am. Jur. 2d <u>Partnership</u> § 90 (2008)(noting that "contract of partnership that fixes no definite time for the duration or continuance of the partnership and that, therefore, is susceptible of performance within a year by the dissolution of the partnership" is not within the Statute of Frauds).

Under the UPA, a partner has the right to disassociate from the partnership at any time so long as notice is provided to the other partners.  <u>See</u> N.M.S.A. 1978 § 54-1A-602(a).  This right to disassociate is a right that the parties to the agreement cannot modify or eliminate, except to the extent of requiring notice of disassociation in writing.  <u>See</u> <u>id.</u> § 54-1A-103(b)(6).  Because of these mandatory rights of disassociation, all partnerships under the UPA are arguably terminable at will.

All partnerships are not, however, automatically at-will partnerships.  The UPA defines a "partnership at will" as being "a partnership in which the partners have not agreed to remain partners until the expiration of a definite term or the completion of a particular undertaking."  <u>Id.</u> § 54-1A-101(8).  Unless the partnership is formed with one of these two limitations, it is a partnership at will.

This distinction, however, does not seem to be relevant to the Statute of Frauds.  Regardless of the partnership, the partners will always have an absolute right to disassociate under the UPA.  This disassociation can be rightful or wrongful, even if the partnership is at will.  <u>See</u> <u>id.</u> § 54-1A-602.

Furthermore, disassociation can always potentially lead to the dissolution of the partnership.  In an at-will partnership, disassociation will generally dissolve the partnership.  <u>See</u> <u>id.</u> § 54-1A-801(1).  In other partnerships, disassociation will work a dissolution of the partnership unless a majority in interest affirmatively agree to continue the partnership.  <u>See</u> <u>id.</u> § 54-1A-801(2)(i).

The only significant differences between partnerships at will and other partnerships under the UPA is the circumstances under which disassociation is rightful or wrongful, and the ease with which it leads to dissolution.  But in any partnership under the UPA, it would be logically possible for the partnership to be terminated rightfully.  UPA partnerships might thus be terminable at will for the purposes of the Statute of Frauds.  Because the Court decides the motion on other grounds, however, the Court need not decide whether the alleged partnership is terminable at will.

The Court will also not decide whether there is evidence supporting those counts. The Defendants raised the issue of there being insufficient evidence on those counts for the first time in their reply brief. See Reply at 11-12. The Defendants assert that "[t]here is no evidence in [t]he record that the materials prepared by Plaintiff bestowed any benefit on Defendants or that the materials played any role in Defendants' acquisition of" the Winrock Center or development plans for the Winrock Center. Id. at 12. The Defendants also assert that Leon has introduced no actual evidence at all in support of Count IV of his complaint.

In a motion for summary judgment, once the movant has shown an absence of evidence the non-moving party must designate specific facts showing that there is a genuine issue for trial. See Celotex Corp. v. Catrett, 477 U.S. at 324 (1986). Because the Defendants raised this argument for the first time in their reply brief, Leon has not had a full opportunity to make his required showing of a genuine issue for trial as to Counts III and IV. This argument is therefore not properly before the Court, and the Court will not address it.

**IT IS ORDERED** that the Defendants' Motion for Summary Judgment on All Claims and Memorandum of Law in Support is denied.

_____
UNITED STATES DISTRICT JUDGE

_Counsel_:

Thomas L. Grisham
Stephen F. Lawless
Grisham & Lawless P.A.
Albuquerque, New Mexico

  _Attorneys for the Plaintiff_

John M. Eaves
Karen S. Mendenhall
Eaves & Mendenhall, P.A.
Albuquerque, New Mexico

*Attorneys for the Defendant*s