## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

RICK LEON,

       Plaintiff,

vs.                                                                          No. CIV 07-0467 JB/WDS

MIKE KELLY and GARY GOODMAN,

       Defendants.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendants' Motion for Summary Judgment No. 3, as to All Claims Asserted Against Defendant Gary Goodman, filed June 30, 2008 (Doc. 41)("Motion for Summary Judgment"). The Court held a hearing on September 9, 2008. The primary issues are: (i) whether there was any partnership agreement between Plaintiff Rick Leon and Defendant Gary Goodman; and (ii) which claims in the Complaint are dependent upon the existence of such an agreement. As stated at the hearing, because Leon does not contest that there was no agreement between Goodman and himself, the Court will grant the Defendants' motion to that extent. The issue then becomes which, if any, claims that Leon asserts against Goodman are predicated upon an agreement. The Court concludes that some of the claims asserted in the Complaint are premised on the existence of an agreement between Leon and Goodman, but other claims are not. Accordingly, the Court will grant in part and deny in part the Motion for Summary Judgment.

### FACTUAL BACKGROUND

This case arises out of a dispute over the acquisition and development of the Winrock Center in Albuquerque, New Mexico. America's Place Partners LLC, a company that Goodman and Kelly

formed, purchased the Winrock Center.  Leon contends, however, that he and Kelly were in a partnership whose purpose was to buy the Winrock Center, and that Kelly and Goodman froze him out of the deal.  The Court has already discussed much of the background of this case in greater detail elsewhere.  <u>See</u> Memorandum Opinion and Order at 1-6, entered October 23, 2008 (Doc. 59).  No additional facts are necessary to the resolution of the present motion, as it turns entirely upon the effect of Leon's concession that he and Goodman never had a partnership agreement.

### PROCEDURAL BACKGROUND

Leon raises the same causes of action in his Complaint against both Kelly and Goodman.  <u>See</u> Complaint for Bad Faith and Fraud, filed May 11, 2007 (Doc. 1)("Complaint").  The Defendants move to dismiss all of the claims that Leon raises against Goodman.  The Defendants contend that there is no evidence or allegation that Leon and Goodman were ever in a partnership together or had a contractual relationship.  According to the Defendants, Leon does not allege that he and Goodman had a partnership agreement to acquire and develop the Winrock Center.  <u>See</u> Motion for Summary Judgment ¶ 4, at 2.  The Defendants also maintain that Leon has stated that only he and Kelly had an agreement, <u>see id.</u> ¶ 6, and that Goodman "did not owe [Leon] any duty other than to 'acknowledge and accept'" that Leon was Kelly's partner, <u>id.</u> ¶ 9, at 3.

The Defendants argue that Leon's contentions all "stem from his allegation that Mr. Kelly agreed to a partnership with him for the acquisition and development of Winrock." <u>Id.</u> at 4.  "[E]ven when given the opportunity to do so," the Defendants maintain, Leon has never stated that he and Goodman "were partners in any capacity." <u>Id.</u>  According to the Defendants, Leon has admitted that Goodman "did not owe him duties" and did not "have any obligations to him." <u>Id.</u> at 6.  Because Goodman allegedly did not owe Leon any duties, the Defendants request that the Court dismiss all the claims against Goodman and award him costs pursuant to Local Rule of Civil Procedure 54.  <u>See</u>

Motion for Summary Judgment at 6.

In response, Leon admits that many of the facts the Defendants has laid out are true, but contests others.  Leon admits that he and Goodman did not enter into a partnership agreement for the acquisition and development of the Winrock Center.  <u>See</u> Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment No. 3 as to All Claims Asserted Against Defendant Gary Goodman ¶ 4, at 2, filed July 25, 2008 (Doc. 46)("Response").  Leon disputes, however, that he said that Goodman owed no duty to him, and points out that, in his deposition, he stated that both Kelly and Goodman has obligations to him.  <u>See id.</u> ¶ 9, at 3.  Leon also asserts additional facts, based on an accompanying affidavit, that he maintains create a disputed issue of fact in this case. He asserts that Goodman told him that "he was aware of Leon's role and equity requirements." <u>Id.</u> ¶ 1, at 3.  Leon also states that Goodman told him that "he accepted the arrangement of the equity ownership [of the Winrock Center] being 10%, 10%, 80%." <u>Id.</u> ¶ 2.

Leon acknowledges that the "Defendants correctly assert that [he] does not claim that there was ever a partnership between Leon and Goodman." <u>Id.</u> at 4.  Leon argues that the lack of an agreement is irrelevant, however, because "[n]one of the relief sought against Goodman is premised in any way on a partnership between Leon and Goodman." <u>Id.</u> at 5.  "In fact," Leon contends, "had Kelly and Goodman brought Leon into the new partnership or brought Goodman into the original partnership between Kelly and Leon, there would be no need for this lawsuit." <u>Id.</u> at 5-6.

In replying to Leon's arguments, the Defendants first urge the Court to disregard the affidavit that Leon attached to his Response or else strike it from the record.  The Defendants argue that Leon's affidavit conflicts with his "prior sworn testimony" and "is merely an attempt to create a sham fact issue."  Reply in Support of Defendants' Motion for Summary Judgment No. 3 as to All Claims Asserted Against Defendant Gary Goodman at 2, filed August 15, 2008 (Doc. 51)("Reply").

The Defendants maintain that there are discrepancies between almost every assertion in Leon's affidavit and his deposition testimony.  For instance, the Defendants contend that, contrary to the affidavit, Leon testified that he met with Goodman and told him about his deal with Kelly in March 2007, after the Defendants had already signed the agreement to purchase the Winrock Center.  See id. at 2-3.  The Defendants also contend that the statement in Leon's affidavit that Goodman agreed to be an 80% equity partner with Leon and Kelly conflicts with his deposition testimony that he only spoke with Goodman after the purchase was complete, to inform Goodman that he and Kelly had a deal to buy the Winrock Center.  See id. at 3.

The Defendants then argue that Leon has failed to dispute many of the factual statements they laid out and thus the statements are admitted.  The Defendants also argue that Leon misstates his deposition testimony in responding to the facts the Defendants have presented.  See id. at 6-8.  The Defendants further contend that Leon has erroneously imported the standard for rule 12(b)(6) motions to dismiss into the summary judgment context.  The Defendants maintain that they have met their burden of showing there is no genuine dispute of material fact, while Leon has failed to come forward with any evidence to create a factual dispute.  See Reply at 8-9.

According to the Defendants, "[t]he most puzzling aspect of" the Response is Leon's theory that he never had a partnership with Goodman but that this fact is irrelevant to his claims, which the Defendants characterize as a "sudden assertion of an entirely new claim not raised in his Complaint[,] in his submittals to the Court or in his deposition testimony, and one which is internally inconsistent with his Affidavit."  Reply at 9.  The Defendants argue that Leon's response to their first motion for summary judgment conflicts with his position here.  The Defendants interpret Leon's previous briefing as stating that Counts III and IV of his Complaint are only inapplicable if there is no partnership, implying that a partnership is required for Counts I, II, and

-4-

V.  See Reply at 9.  Because of this earlier stance, the Defendants contend that the Court should strike Leon's arguments that Counts I, II, and V against Goodman do not require Leon and Goodman to have been partners.  See Reply at 9-10.

Finally, the Defendants argue that all five counts asserted in the Complaint against Goodman are premised upon the existence of a contract between Goodman and Leon.  The Defendants argue that the Court should dismiss Count I because the allegations in that count depend upon Leon and the Defendants all being in a partnership together.  See Reply at 10.  The Court should dismiss Count II, the Defendants maintain, because its alleges a breach of fiduciary duties, and the only basis for such a claim would be the non-existent partnership agreement with Goodman.  See Reply at 11-12.  As to Count III, the Defendants argue that this count is based on alleged misrepresentations about the intent of Kelly and Goodman to join in a partnership with Leon, and that the Court should thus dismiss Count III.  See Reply at 12-13.  The Defendants also contend that the Court should dismiss Count IV, because it alleges that the Defendants fraudulently deprived Leon of the benefit of his bargain.  The Defendants maintain, however, that because Leon has disclaimed any agreement with Goodman, the Court should dismiss Count IV.  See Reply at 13.  Finally, the Defendants argue that the Court should dismiss Count V because it reiterates, in conspiracy form, a breach of fiduciary duty claim that cannot be maintained.  See Reply at 13-14.

At the hearing, the parties agreed that there was no dispute that Goodman and Leon never had a contract and that the remaining issue was what counts against Goodman should remain.  See Transcript of Hearing at 69:5-19 (taken September 9, 2008)(Court & Eaves)("Tr."); see id. at 70:4-9 (Grisham).  Thomas L. Grisham, Leon's counsel, stated that Leon's position was that all the counts should remain, because he was seeking damages for being frozen out of the Winrock Center deal, and not for breach of a partnership agreement with Goodman.  See id. at 70:4-71:22. John M. Eaves,

the Defendants' attorney, reiterated the Defendants' position that each count in the Complaint ultimately depends upon Leon having a partnership with Goodman.  See Tr. at 72:20-74:1 (Eaves).

## ANALYSIS

The key issue in this motion is which of the counts in the Complaint are so interwoven with there being an agreement between Leon and Goodman that they must fail in the absence of such an agreement.  Leon concedes that he and Goodman were never involved in a partnership to acquire or to develop the Winrock Center.  Nonetheless, Leon contends that the absence of an agreement is not fatal to his claims against Goodman, while the Defendants argue that all of Leon's claims against Goodman must fail without an agreement to support them.  Both sides are right to a degree. Some of the claims Leon has asserted in his Complaint are dependent upon the existence of an agreement, but others can stand without any agreement to support them.

**I.     THE COURT WILL GRANT SUMMARY JUDGMENT IN FAVOR OF GOODMAN ON THE ISSUE OF THE EXISTENCE OF A PARTNERSHIP BETWEEN HIM AND LEON.**

The Defendants move the Court to find that there is no evidence that Goodman and Leon were ever partners.  Leon concedes that he and Goodman were never in a partnership to acquire or to develop the Winrock Center.  See Response ¶ 4, at 2; Tr. at 70:4-7 (Grisham).  Accordingly, as there is no dispute on this particular issue, the Court will grant the Motion for Summary Judgment to that extent.  Goodman and Leon never had any partnership agreement to acquire or to develop the Winrock Center.

**II.     THE COURT WILL NOT STRIKE LEON'S AFFIDAVIT.**

The Defendants argue that the Court should strike or disregard Leon's affidavit attached to his Response.  Leon's affidavit largely concerns statements about his relationship with Goodman, particularly that Leon informed Goodman of the partnership between Leon and Kelly, see Exhibit

1 to Response, Affidavit of Rick Leon ¶ 3, at 1 (Doc. 46-2)(executed July 24, 2008)("Aff."), and that he and Goodman had discussed the ownership percentages for the project, see id. ¶¶ 4-6, at 2.  To the extent that the affidavit states that Goodman and Leon had reached an agreement to be partners, the affidavit would be inconsistent with Leon's admission that no such partnership existed, but the Court interprets the affidavit to relate discussions with Goodman about the Winrock Center project, and not to be asserting a finished agreement.  The Defendants also point to other inconsistencies between the affidavit and Leon's testimony -- such as asserting at deposition that Kelly would contribute money for his 10% equity, while asserting in his affidavit that Kelly would contribute sweat equity.  See Reply at 3-5.  Most of these inconsistencies are not relevant to this motion, given Leon's concession, nor do they appear to be made in an attempt to defeat summary judgment. Accordingly, the Court does not see a reason to strike the affidavit.

        The Court also does not believe that Leon has shifted his position between the current Response and Leon's response to the Defendants' first motion for summary judgment.  While the Defendants argue that Leon has admitted that Counts I, II, and V of his Complaint rely upon the existence of a partnership agreement and so any contrary argument should be stricken, see Reply at 9-10, the Court believes that the Defendants are misinterpreting to which partnership agreement Leon is referring.  In his previous response, Leon stated that Counts III and IV of his Complaint are not dependent upon a partnership and are "only applicable if there is no partnership."  Response in Opposition to Defendant's Motion for Summary Judgment, filed April 8, 2008 (Doc. 31)("First Response").  The context of this statement, however, is important.  Leon was responding to the Defendants' motion to dismiss the case as barred by the Statute of Frauds.  Read as a whole, it seems to the Court that the partnership mentioned in the First Response is the partnership between Leon and Kelly that Leon alleges.  The Court does not see any inconsistency between Leon conceding that

-7-

he never had any partnership with Goodman, and contending that Counts I, II, and V of his Complaint still stand, because those counts are based on the existence of an agreement between Leon and Kelly, not between Leon and Goodman.

### III.   SOME OF THE COUNTS IN THE COMPLAINT DEPEND UPON GOODMAN AND LEON HAVING A CONTRACT, WHILE OTHER COUNTS DO NOT.

The Complaint asserts five causes of action against Goodman: (i) for deprivation of the benefit of his bargain and breach of the covenant of good faith and fair dealing; (ii) for breach of fiduciary duties; (iii) for misrepresentation; (iv) for fraud; and (v) for conspiracy to commit fraud and breach of fiduciary duties, and conspiracy to interfere with business relationships.  Leon's first two counts are dependent upon him having a contract or similar arrangement with Goodman  and the Court will dismiss those counts with respect to Goodman.  The other counts, however, do not rely upon the existence of a contract between Goodman and Leon, so the Court will allow those counts to remain.

### A.   COUNT ONE -- BENEFIT OF BARGAIN AND THE COVENANT OF GOOD FAITH AND FAIR DEALING -- REQUIRES THE EXISTENCE OF A CONTRACT.

The first count in the Complaint alleges that the Defendants sought to "deprive [Leon] of the benefit of his bargain," and acted in "breach of the covenant of good faith and fair dealing." Complaint ¶ 23, at 4.  It is unclear what Leon means by pleading that the Defendants deprived him of the benefit of his bargain.  To the extent that he is alleging breach of contract, he would be required to have a contract with Goodman.  To the extent that he is alleging fraud, or tortious interference with contractual relations, those causes of action and any damages flowing from them are covered under the later counts.

The final cause of action in Count I is for breach of the covenant of good faith and fair

dealing.  In New Mexico, the existence of a covenant of good faith and fair dealing requires an underlying contract.  See Jaynes v. Strong-Thorne Mortuary, Inc., 124 N.M. 613, 617, 954 P.2d 45, 49 (1997)("In New Mexico there exists a duty of good faith and fair dealing . . . in every contract."); Watson Truck & Supply Co., Inc. v. Males, 111 N.M. 57, 60, 801 P.2d 639, 642 (1990)("Whether express or not, every contract imposes upon the parties a duty of good faith and fair dealing in its performance and enforcement.").  Because Leon and Goodman never had an agreement to acquire or to develop the Winrock Center, Goodman could not have breached any implied covenant of good faith for allegedly freezing Leon out of the deal that eventually occurred.  The Court will therefore grant summary judgment in favor of Goodman on Count I.

**B.**     **COUNT TWO -- BREACH OF FIDUCIARY DUTIES -- REQUIRES THE EXISTENCE OF A CONTRACT OR SIMILAR SOURCE OF DUTIES.**

The second count in the Complaint alleges that the Defendants' actions amounted to "a breach of fiduciary duties of parties and partners and an attempt to deprive [Leon] of his rights under their agreements."  Complaint ¶ 27, at 4-5.  Goodman cannot be held accountable for a breach of fiduciary duties, however, because he was not in a fiduciary relationship with Leon.  Accordingly, the Court will grant summary judgment in favor of Goodman on Count II.

While partners owe each other fiduciary duties, Leon has admitted that he and Goodman were never partners.  Leon has also admitted that he never assigned Goodman to represent his interests in dealings with Kelly.  See Motion for Summary Judgment ¶ 7, at 2.  Leon must base his breach of fiduciary duty claim on some other foundation.  The evidence, however, does not reveal any other foundation on which Leon can build.  Leon depends upon his deposition testimony that Goodman "had a fiduciary responsibility to acknowledge and accept [Leon's] position."  Deposition of Rick Leon at 311:15-16 (Doc. 41-2)("Leon Depo.").  That bare assertion is insufficient to

withstand summary judgment and establish the existence of a fiduciary relationship.  Nor do Leon's assertions that Goodman was aware of his partnership with Kelly, or that Goodman could accept Leon's proposals regarding the equity ownership of the project, create a fiduciary relationship.  See Response ¶ 1-2, at 3.

A fiduciary relationship is a particularly stringent relationship, and the law accordingly does not make all business relationships or prospective business relationships into fiduciary relationships. "'A fiduciary relationship exists in all cases where there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of one reposing the confidence.'"  Robertson v. Carmel Builders Real Estate, 135 N.M. 641, 653, 92 P.3d 653, 661 (Ct.App. 2003)(quoting Swallows v. Laney, 102 N.M. 81, 84, 691 P.2d 874, 877 (1984)).  The Court does not see any evidence that Goodman and Leon were in any special relationship that would give rise to fiduciary duties.  The most the evidence can support is that Goodman made some tentative statements that he was amenable to the terms that Leon proposed. Even if these statements rose to the level of creating a contract, that would not mean that there was a fiduciary relationship.  See Hydro Resources Corp. v. Gray, 143 N.M. 142, 153, 173 P.3d 749, 760 (2007)(noting that not all contracts create fiduciary relationships).  The only plausible basis for a fiduciary relationship that the Court can see would be a partnership agreement, which Leon has specifically disavowed.

### C.    COUNT THREE -- MISREPRESENTATION -- DOES NOT REQUIRE THE EXISTENCE OF A CONTRACT.

The third count in the Complaint accuses the Defendants of making "intentional and/or negligent misrepresentations of [their] intent to join in partnership with [Leon] in an attempt to use materials written and developed by [Leon] and acquire the Winrock Center property for

-10-

themselves." Complaint ¶ 31, at 5.  New Mexico has adopted the tort of negligent misrepresentation

as that tort is described in the Restatement of Torts (Second) § 552:

> One who, in the course of his business, profession or employment, or in any other
> transaction in which he has a pecuniary interest, supplies false information for the
> guidance of others in their business transactions, is subject to liability for pecuniary
> loss caused to them by their justifiable reliance upon the information, if he fails to
> exercise reasonable care or competence in obtaining or communicating the
> information.

Stotlar v. Hester, 92 N.M. 26, 29, 582 P.2d 403, 406 (Ct.App. 1978)(quoting Restatement of Torts

(Second) § 552), cert. denied, 92 N.M. 180, 585 P.2d 324 (1978).  See NMRA, Civ. UJI 13-1632.

The loss must be suffered "by the person or one of a limited group of persons for whose benefit and

guidance  [the tortfeasor] intends to supply the information or knows that the recipient intends to

supply it."  Stotlar v. Hester, 92 N.M. at 29, 582 P.2d at 406.  The loss must also be suffered

"through reliance upon it in a transaction that [the tortfeasor] intends the information to influence

or knows that the recipient so intends or in a substantially similar transaction."  Id.  Other New

Mexico cases have stated the elements of negligent misrepresentation in a less archaic fashion as

being very similar to the elements of fraud: "(1) . . . a material misrepresentation of fact to Plaintiffs,

(2) Plaintiffs relied upon such representation, (3) [Defendant] knew the representation was false at

the time it was made or made it recklessly, and (4) [Defendant] intended to induce Plaintiffs to rely

on such representation."  Parker v. E.I. DuPont de Nemours & Co., Inc., 121 N.M. 120, 132, 909

P.2d 1, 13 (Ct.App. 1995).

      The elements of negligent misrepresentation -- under either version of the elements -- do not

require the existence of any contract.  Negligent misrepresentation is a tort, and while it requires a

professional or business relationship to a certain degree, it does not require an actual contract or

partnership.  Accordingly, the non-existence of a partnership between Goodman and Leon will not

defeat a claim against Goodman for misrepresentation.[1]

**D.      COUNT FOUR -- FRAUD -- DOES NOT REQUIRE THE EXISTENCE OF A CONTRACT.**

According to the fourth count in the Complaint, the Defendants actions "in obtaining information on how to . . . acquire and develop the Winrock Center and obtaining [Leon's] expertise in creating pro formas, analysis, and development of the shopping center were all done with the intent of later depriving him of any benefit of actions and constituted fraud therein." Complaint ¶ 35, at 5-6. The elements of fraud in New Mexico hew closely to the traditional common-law elements: "(1) a misrepresentation of fact, (2) either knowledge of the falsity of the representation or recklessness on the part of the party making the misrepresentation, (3) intent to deceive and to induce reliance on the misrepresentation, and (4) detrimental reliance on the misrepresentation." Cain v. Champion Window Co. of Albuquerque, LLC, 142 N.M. 209, 216, 164 P.3d 90, 97 (Ct. App. 2007)(internal quotation marks omitted).

None of these elements require any agreement or pre-existing relationship between the defrauder and the victim. A person can commit fraud on another despite not having a contract with that person. The Defendants contend that, because the only bargain of which Goodman could have deprived Leon is Leon's alleged agreement with Kelly, the Court should dismiss "all claims relating to the benefit of Mr. Leon's 'bargain' as they pertain to Mr. Goodman." Reply at 13. The Court, however, sees nothing legally impermissible with an allegation that a defendant used fraud to deprive a plaintiff of the benefits of his bargain with someone other than the defrauding party. In

---

[1] New Mexico law seems to treat intentional misrepresentation similarly to negligent misrepresentation in some respects, and the Court does not see how intentional misrepresentation would require a contract. See Parker v. E.I. DuPont de Nemours & Co., Inc., 121 N.M. at 132, 909 P.2d at 13 (discussing "negligent or intentional misrepresentation").

other words, Leon may properly raise a fraud claim against Goodman where the detrimental reliance alleged is Leon's losses on his agreement with Kelly.

### E.     COUNT FIVE -- CONSPIRACY -- DOES NOT REQUIRE THE EXISTENCE OF A CONTRACT.

The fifth and final count in the Complaint alleges that the Defendants were engaged "in a conspiracy to defraud, a conspiracy to interfere with [Leon's] business relationships and a conspiracy to breach the fiduciary duty" the Defendants owed to Leon.  Complaint ¶ 38, at 6. Although stated as a single count, each of these three sub-parts of the count requires a separate analysis.  Ultimately, however, all of the separate claims may stand against Goodman despite an absence of contract.

First, just as Leon may bring a claim of fraud against Goodman without a contract between them, so can Leon bring a claim of conspiring to defraud.  Second, interference with business relationships or contractual relationships is an economic tort that often occurs in the absence of any sort of relationship between the tortfeasor and plaintiff.  Under New Mexico law, a plaintiff must show that:

> (1) [the defendant] had knowledge of the contract; (2) [the p]laintiff was unable to fulfill [its] contractual obligations; (3) [the defendant] played an active and substantial part in causing [the p]laintiff to lose the benefits of the contract; (4) [the p]laintiff suffered damages resulting from the breach; and (5) [the defendant] induced the breach without justification or privilege to do so.

Martin v. Franklin Capital Corp., 2008-NMCA-152, ¶ 7, 195 P.3d 24, 27 (Ct.App. 2008)(internal quotation marks omitted).  Additionally, "the plaintiff must prove that the defendant acted with either an improper motive or improper means, and the improper motive or improper means must be used in persuading the person to breach the contract, but the improper motive need not be the sole

motive." Id. (internal quotation marks omitted).[2]  No preexisting contract or relationship is needed

to succeed on such a claim, so the lack of any agreement between Goodman and Leon is immaterial.

Leon continues to allege the existence of a partnership between himself and Kelly, which is the

business relationship with which Leon contends Goodman is interfering.

As to the final specific conspiracy claim in Count V, New Mexico courts have not addressed

whether someone who does not owe a person fiduciary duties can conspire to breach fiduciary

duties.  New Mexico has, however, recognized a cause of action for aiding-and-abetting a breach

of fiduciary duties, even where the aiding party does not himself owe the plaintiff any fiduciary

duties.  See GCM, Inc. v. Kentucky Cent. Life Ins. Co., 124 N.M. 186, 191, 947 P.2d 143, 148

(1997).  Given this principle, it seems likely that New Mexico would also recognize a cause of

action for conspiracy to breach fiduciary duties.  Cf. Bank of New York v. Regional Housing

Authority for Region Three, 138 N.M. 389, 397, 120 P.3d 471, 479 (Ct.App. 2005)(dismissing

conspiracy to breach fiduciary duties claim for lack of underlying breach of fiduciary duty, but not

for failure to state a cause of action).  Goodman could therefore be liable for conspiring with Kelly

to breach Kelly's fiduciary duties towards Leon, even though Goodman himself does not have any

independent fiduciary duties to Leon.  Accordingly, the Court will deny summary judgment on

Count V.[3]

---

[2] A cause of action for interference with prospective contracts or prospective business advantages, as opposed to an existing contract, requires that the improper motive be the sole motive. See Silverman v. Progressive Broadcasting, Inc., 125 N.M. 500, 509, 964 P.2d 61, 70 (1998). Leon's claim seems to be interference with an existing agreement, but even if characterized as interference with prospective business advantage, the only change is the intent requirement, so the lack of a contract between Goodman and Leon remains immaterial.

[3] Because the Court is only granting the motion in part and not entering judgment, the Court will not award costs to the Defendants under Local Rule of Civil Procedure 54. Additionally, a motion to tax costs may be made within thirty days of the entry of judgment, and must include an

**IT IS ORDERED** that the Defendants' Motion for Summary Judgment No. 3, as to All Claims Asserted Against Defendant Gary Goodman, is granted in part and denied in part. The Court will grant the motion to the extent of deciding that Plaintiff Rick Leon and Defendant Gary Goodman never had an agreement to acquire or to develop the Winrock Center. The Court will also grant summary judgment in favor of Goodman on Counts I and II of the Complaint, but will deny summary judgment on the remaining counts.

_____
UNITED STATES DISTRICT JUDGE

_Counsel_:

Thomas L. Grisham
Stephen F. Lawless
Grisham & Lawless P.A.
Albuquerque, New Mexico

     _Attorneys for the Plaintiff_

John M Eaves
Karen S. Mendenhall
Eaves & Mendenhall, P.A.
Albuquerque, New Mexico

     _Attorneys for the Defendants_

---

itemized list of costs and a supporting affidavit. <u>See</u> D.N.M.LR-Civ. 54.1.